

FILED

APR 29 2005

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WILLIAM F. DOBROVOLNY, | ) | |
| | ) | Civil No. 98-2386-OMP |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAL A. TERHUNE, et al., | ) | OPINION AND ORDER |
| | ) | |
| Respondents. | ) | |

**PANNER, J.**

William F. Dobrovolny brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I deny the petition.

## BACKGROUND

On July 28, 1994, petitioner and his common-law wife were arrested, along with about twenty-five other homeless men and women, and detained in the Sacramento County Jail.

The jail released defendant and the other men in the early afternoon.  The women were not released with the men.  After

1   - OPINION AND ORDER

waiting an hour for the release of his wife, petitioner asked Andrew Saucedo, a security officer who was working at the front counter of the jail, when his wife would be released. Saucedo told petitioner that the women would be released later in the evening. Saucedo testified that petitioner asked about his wife's release four times between 2:45 and 5:00 p.m.

Petitioner left the jail and worked on his truck, using knives to strip wires. Petitioner then drove back to the jail to wait for his wife's release. He parked about two blocks away. As petitioner was walking towards the jail, he realized he was still carrying two knives. Instead of returning the knives to his truck, petitioner removed one knife from his belt and put it in his boot "so as not to frighten anyone."

At about 5:40 p.m., a nurse who worked in the jail, Barbara Putzel, was standing outside the jail on a break. She saw petitioner cross the street, look around, and then tuck a long knife in the back of his pants under his shirt. Petitioner then walked towards the main entrance of the jail.

Putzel told Saucedo that she had seen a man with a knife walking towards the jail. She gave a brief description of petitioner.

Saucedo then told deputy sheriff John Halk, who was working at the front counter, about Putzel's report. Halk testified at petitioner's trial that he and Saucedo saw a man who matched

2   - OPINION AND ORDER

Putzel's description sitting outside on a concrete planter attached to the jail. Halk testified that when Saucedo saw the man, Saucedo said, "That looks like the guy who has been coming in and asking about his wife."

Saucedo went outside to talk to petitioner. The parties dispute what was said. According to petitioner, Saucedo said that petitioner's wife would be released soon but that Saucedo would need more information from petitioner. Petitioner testified that Saucedo asked petitioner to follow him into the jail, which petitioner did.

Saucedo testified that he told petitioner that the jail planned to release the female arrestees soon. Saucedo denied telling petitioner to follow him into the jail, or saying anything else to petitioner. Saucedo testified that he did not know petitioner had entered the jail behind him until Halk pointed out petitioner.

Halk testified that he saw Saucedo speak to petitioner for a few seconds, then turn and walk back into the jail. Petitioner then entered the jail. Halk testified that Saucedo seemed unaware that petitioner had followed him into the jail.

In the front of the jail's lobby, two large signs warned visitors against bringing weapons into the jail. There was also a large metal detector.

Once inside the jail, petitioner walked towards the metal

3   - OPINION AND ORDER

detector, which activated. Under Halk's questioning, petitioner denied that he had any weapons. When Halk searched petitioner, he found an eight-inch knife in a sheath in petitioner's right boot, and a folding knife in petitioner's left pants' pocket. Halk testified that petitioner said he carried knives because he lived in South Sacramento, saying, "You know what that's like." R. 105. Petitioner was arrested and charged with violating California Penal Code § 4574(a), which provides that "any person, who knowingly brings or sends into . . . any jail . . . or within the grounds belonging or adjacent to any such institution, any . . . deadly weapons" shall be guilty of a felony.

At trial, petitioner contended that Saucedo had entrapped him into entering the jail, knowing that petitioner was carrying a knife. After learning that Saucedo had been suspended from work because of a battery conviction, petitioner's attorney sought additional discovery about Saucedo. The trial court ruled that petitioner could not impeach Saucedo based on the battery conviction, the suspension from employment, or other proceedings against Saucedo.

The jury found petitioner guilty. Because petitioner had two prior convictions for robbery and one for murder, he was sentenced under the Three Strikes law to life in prison with a minimum of twenty-five years.

While petitioner's direct appeal was pending, petitioner's

appellate counsel obtained a transcript of Saucedo's testimony in a civil action brought by another officer against the Sacramento County Sheriff for wrongful termination. The transcript led to further information, including the existence of complaints against Saucedo, alleging sexual harassment, engaging sex with an inmate at the jail, and carrying a firearm despite a conviction for battering his child. After reviewing the additional evidence, and the evidence excluded by the trial court, the California Court of Appeal affirmed the conviction and sentence. The appellate court concluded that the trial court did not err in its evidentiary rulings and that the government did not improperly fail to disclose exculpatory evidence.

The California Supreme Court denied petitioner's petition for review, and later denied petitioner's petition for writ of habeas corpus.

## STANDARD OF REVIEW

Federal courts may grant habeas corpus relief only for violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991). The petitioner has the burden of showing a substantial constitutional deprivation. The federal court must presume that the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1).

A federal court may not grant a state prisoner's petition

for writ of habeas corpus unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

A state court acts "contrary to" federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if it decides a case differently than the Supreme Court on materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Ramdass v. Angelone, 530 U.S. 156, 165-66 (2000). An "unreasonable application of clearly established Federal law" occurs when a state court correctly identifies the governing legal principle but unreasonably applies it to the facts or unreasonably extends or fails to extend the governing principle. Williams, 529 U.S. at 413; Ramdass, 530 U.S. at 166.

## DISCUSSION

### I. Petitioner's Eighth Amendment Challenge Fails

Petitioner contends that his sentence of twenty-five years to life imprisonment violates his Eight Amendment right to be free from cruel and unusual punishment. Sentences under California's Three Strikes law violate the Eighth Amendment's proportionality requirement only in "exceedingly rare" or

"extreme" cases. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 72-73 (2003). In addressing an Eighth Amendment challenge, the court first examines whether the petitioner's sentence is justified by the gravity of the most recent offense and by the petitioner's criminal history. <u>Ramirez v. Castro</u>, 365 F.3d 755, 768 (9th Cir. 2004). Here, I conclude that the state courts' rulings were neither contrary to federal law, nor an unreasonable application of clearly established federal law.

Petitioner's most recent offense, bringing a dangerous weapon onto jail property, was serious, although it did not involve actual violence. Petitioner's criminal history is extensive:

> Defendant was 43 years old when he committed his current offense. He had a criminal record going back to 1969, when he committed murder. This offense was followed by two robberies, each resulting in substantial prison terms. Defendant has spent much of his adult life in custody. Defendant had been most recently paroled on December 14, 1992, and was convicted of shoplifting in early 1994. The picture of defendant that emerges is of a man with a serious criminal record involving acts of violence or threats of violence and inability, or unwillingness, to conform to the laws of society.

R. at 262 (Cal. Ct. of Appl. slip op.).

Considering petitioner's most recent crime and his criminal history, I conclude that petitioner failed to show that this is an "exceedingly rare" case in which the sentence is so grossly disproportionate as to violate the Eighth Amendment.

7   - OPINION AND ORDER

## II. Evidence on Saucedo's Credibility

Petitioner contends that he was improperly denied full disclosure of evidence damaging to Saucedo's credibility. Petitioner contends that he should have had complete access to evidence concerning Saucedo, including Saucedo's personnel file. Petitioner's theory that Saucedo entrapped him into entering the jail is dubious at best. More importantly, as the California Court of Appeal noted, Saucedo's testimony was not necessary to petitioner's conviction because the crime was complete before petitioner entered the jail. "[T]he jury was instructed that actual entry into the jail was not required for a violation of [the statute]; the crime could be committed by bringing a deadly weapon onto grounds adjacent to the jail." R. at 251. I therefore conclude that petitioner has not shown a violation of Brady v. Maryland, 373 U.S. 83, 87 (1963), because the evidence regarding Saucedo's credibility was not material. See United States v. Cooper, 173 F.3d 1192, 1202-03 (9th Cir. 1999). The state appellate ruling on the excluded evidence was not an objectively unreasonable application of clearly established federal law.

## III. Petitioner's Other Contentions Lack Merit

### A. Ineffective Assistance

Petitioner contends that his trial counsel was ineffective for failing to investigate Saucedo's background more extensively

8 - OPINION AND ORDER

and for inadequately representing him at sentencing. Even assuming petitioner's trial counsel's performance was deficient regarding the investigation of Saucedo, petitioner cannot show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). Saucedo's testimony was unnecessary to the conviction.

I also conclude that trial counsel's performance at sentencing was not outside the "wide range of reasonable professional assistance." Id. at 689.

### B. Insufficient Evidence

Petitioner contends that the evidence was insufficient to establish the offense. Viewing the evidence in the light most favorable to respondents, I conclude that petitioner has failed to show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). There was overwhelming evidence that petitioner carried two knives onto jail property.

In addition, California courts did not unreasonably apply clearly established federal law in ruling that the statute defining the offense was not unconstitutionally vague. See Cooper, 173 F.3d at 1202.

Petitioner's other arguments lack merit.

## CONCLUSION

The petition for writ of habeas corpus (#1) is denied.

IT IS SO ORDERED.

Dated this 22 day of April, 2005.

*[signature]*

Owen M. Panner
United States District Judge